**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARLA MADER, MARTIN E. MADER, MIECZYSLAW GNIADEK, SABINE GNIADEK, <br><br> Plaintiffs, <br><br> v. <br><br> UNION TOWNSHIP, HEATHER DAERR, CHARLES TRAX, JR., RICHARD LAWSON, FRANK L. MASSARI, GARY SWEAT, KEVIN DAERR, JESSICA STINER, JARROD D'AMICO, KRIS BOCKSTOCE, MICHAEL E. CRUNY, JAMES HARSHMAN, TRAVIS RICHMOND, and DOES 1–50, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  2:20-CV-01138-CCW |

<u>**OPINION DENYING THE MADER PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION**</u>

      Before the Court is a Motion for Preliminary Injunction filed by *pro se* Plaintiffs Carla and

Martin Mader.[1]  ECF No. 39.  For the following reasons, Plaintiffs' Motion shall be DENIED.

**I.      Procedural History**

      The Maders are a married couple who reside on Cardox Road, a connector road adjacent

to Route 88 in Union Township, Pennsylvania.  ECF No. 39-1, at 1;  ECF No. 103, at ¶ 1.  The

Maders, together with their neighbors, the Gniadeks, all of whom are *pro se*, filed a 7-count

Complaint, ECF No. 1, and then a 26-count Amended Complaint, ECF No. 19, claiming that Union

Township and those acting on its behalf, among other things, took their property without due

---

[1] Only the Mader Plaintiffs are parties to the Motion for Preliminary Injunction. ECF No. 39. The Court provided an opportunity for the Gniadek Plaintiffs to file a motion substantially similar to the Mader Plaintiffs' Motion for Preliminary Injunction, ECF No. 49, but the Gniadek Plaintiffs declined to do so.

process, excluded them from public meetings, misused legal procedure, intentionally inflicted emotional distress on Plaintiffs, negligently disregarded their public duties, trespassed, defamed Plaintiffs, and violated Plaintiffs' First Amendment rights. *See* generally, ECF No. 19.  The Mader Plaintiffs moved for a temporary restraining order or, alternatively, a preliminary injunction that enjoins "Defendants, officers, agents, employees and attorneys and all persons acting in concert with them to be restrained from assembly of any meetings for taking properties, commencing on the Cardox Road [P]roject, and/or further violations of the Pennsylvania Sunshine Act 65 Pa. C.S. §§ 701-716," ECF No. 39-3, until "Plaintiffs[] hire E-Clause, LLC[], [a] loss prevention specialist, to perform an audit and investigate the abuse of power" and other violations alleged in the Complaint, ECF No. 39, at 8, and E-Clause's "report is delivered to the state legislature regarding impeachment and investigation," ECF No. 39-3.

On October 23, 2020, the case was reassigned to the undersigned.  ECF No. 34.  On October 30, 2020, the Court issued an order denying the Mader Plaintiffs' Motion to the extent it sought a temporary restraining order, given that Defendants had been served, but indicating that the Court would entertain the Mader Plaintiffs' Motion to the extent it sought a preliminary injunction.  ECF No. 41.

The Court held a Telephonic Status Conference on November 17, 2020 to discuss the Mader Plaintiffs' Motion for Preliminary Injunction.  ECF No. 47.  The same day, the Court issued an Order scheduling the Mader Plaintiffs' Motion for a hearing on January 21, 2021 and gave the Gniadek Plaintiffs an opportunity to file a similar motion for preliminary injunction, should they wish to do so, on or before November 19, 2020.  ECF No. 49.  The Gniadek Plaintiffs never filed such a motion.  On November 19, 2020, the Mader Plaintiffs moved for leave to conduct limited discovery in advance of the hearing.  ECF No. 51.  The Court granted the Maders' motion for

limited discovery in part and authorized Plaintiffs to conduct written discovery and take several depositions.  ECF No. 59.  The limited discovery period closed on January 11, 2021.  *See* ECF No. 59, at 8.  On January 21, 2021, the Court held an evidentiary hearing on the Mader Plaintiff's Motion for Preliminary Injunction.  *See* ECF No. 99.  During that hearing, Defendants Frank Massari, Charles Trax, Jr., Jessica L. Stiner, and Richard Lawson, along with Ms. Martha Frech and Kenneth Puglisi testified for the Mader Plaintiffs.  ECF No. 102, at 3.  Defendants Jessica L. Stiner and Gary Sweat testified for the Defendants.  *Id*.  Each witness testified credibly.

Following the hearing, the parties submitted amended findings of fact and conclusions of law to the Court, ECF Nos. 103 and 104.  The parties also filed additional briefs regarding whether the Anti-Injunction Act,  28 U.S.C. § 2283 prevents the Court from issuing the injunction the Maders' requested and whether the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), which provides federal courts with the discretion to abstain from deciding certain issues, is appropriate for the Court to apply to the Maders' Motion for Preliminary Injunction, ECF No. 39.  *See* ECF Nos. 113, 118, 121, 124.

In addition to bringing this lawsuit to challenge the Township's actions to complete the Cardox Road Project on their property, the Maders are defendants in ongoing state proceedings through which the Defendant Township seeks to assert eminent domain over the Maders' property. *See* ECF No. 99-1, at Joint Exs. 6 and 7.  Defendant Union Township filed a declaration of taking in the Court of Common Pleas of Washington County, Pennsylvania on July 9, 2020—three weeks before this action was filed—to obtain a permanent easement by eminent domain on the Maders' property for a storm water drain in connection with the Cardox Road Project.  ECF No. 99-1, at Joint Ex. 6.  On July 30, 2020, the same day that Plaintiffs filed this federal court case, Defendant Union Township filed a second declaration of taking in Washington County to obtain a temporary

easement on the Maders' property for the purposes of constructing the Cardox Road Project by eminent domain.  *See* ECF No. 99-1, at Joint Ex. 7.  The Maders moved to set aside and vacate the declarations of taking and filed preliminary objections to the declarations of taking in each case. *See Union v. Mader*, Docket No. C-63-cv-20203284 (Pa. C.P. Washington) (entry nos. BL-4 and BL-9);  *Union v. Mader*, Docket No. C-63-cv-20203712 (Pa. C.P. Washington) (entry nos.  BL-4, and BL-5).

The Maders' Motion for Preliminary Injunction is now ripe for disposition.

## II.     Factual Background

As previously mentioned, the Maders reside on Cardox Road in Union Township, Pennsylvania.  ECF No. 39-1, at 1;  ECF No. 103, at ¶ 1.  Since at least 2018, the Union Township Board of Supervisors has had concerns about the safety of Cardox Road.  ECF No. 103, at ¶ 1.  As of 2019, Cardox Road was narrow and of irregular width, with the paved portion varying from 14 to 17 feet wide, and trees and shrubs obstructed motorists' ability to observe oncoming traffic.  *Id* at ¶ 2.   Indeed, school busses are prohibited from traveling on Cardox Road because the Transportation Director of the Ringgold School District deems it unsafe.  *Id.* at ¶ 3.  Anticipating that real estate developers were in the process of planning and constructing large housing developments in neighboring South Park Township, which would increase the volume of traffic on Cardox Road, the Union Township Supervisors developed a plan to upgrade Cardox Road to create a uniform width and to remove trees and brush to promote safety (the "Cardox Road Project").  *Id.* at ¶¶ 4–5.

Defendant Jessica Stiner, a Harshman Group CE engineer and the Township's official engineer, designed the engineering features of the Cardox Road Project, including the pavement, curbing, signs, and road drainage.  *Id.* at ¶ 7.  By April 8, 2020, Defendant Stiner had completed

4

her design for the Cardox Road Project. The design called for a 24-foot wide, paved cartway[2], wedge curbing, and a riprap[3] drainage outlet to be placed next to the berm of the road on property owned by the Mader Plaintiffs. *Id*. at ¶ 8. Defendant Stiner based the Cardox Road Project design on her professional engineering judgment regarding best practices for road safety, taxpayer expense, and impact on properties abutting the road. *Id*. at ¶ 9. On April 8, 2020, the Township Supervisors approved the Township's annual road improvement projects, including the Cardox Road Project, to be advertised for bids based on Defendant Stiner's engineering designs. *Id*. at ¶ 12. At that time, Defendant Stiner advised the Township that the expected cost of the project would be approximately $402,000. *Id*. at ¶ 12.

Several Cardox Road residents attended various Township meetings to ask about the scope of the work to be completed and to voice concerns about traffic on the road, including speeding and overweight vehicles. *Id.* at ¶ 13. The Township Supervisors passed several resolutions in favor of providing traffic-calming measures requested by the residents in two written petitions—the Mader Plaintiffs were signatories to both petitions. *Id*. The requested and approved traffic-calming devices included speed bumps and cameras to monitor overweight vehicles. *See* ECF No. 99-1, at Joint Ex. 1; ECF No. 102, at 147:5–9, 148:12–18.

In early May 2020, Harshman Group employees made personal calls to Cardox Road residents to answer their questions about the Cardox Road Project and to request that the residents agree to grant easements that the Township needed to complete the Cardox Road Project. *Id*. at ¶ 14. After two different meetings between Harshman employees and the Maders, the Maders

---

[2] Defined as "a road for carts: a rough unimproved road." *Cartway*, <u>Merriam-Webster</u> (2021), <u>https://www.merriam-webster.com/dictionary/cartway</u>.

[3] None of the witnesses at the preliminary injunction precisely defined "riprap." Merriam Webster's online dictionary defines it as "a layer of [stones or chunks of concrete] or similar material on an embankment slope to prevent erosion" or "material used for riprap." *Riprap*, <u>Merriam-Webster</u> (2021), <u>https://www.merriam-webster.com/dictionary/riprap</u>.

refused to voluntarily grant the Township easements on their property to complete the Cardox Road Project. *Id*. at ¶15. At the second meeting, Carla Mader told the Harshman employee that he was trespassing and directed him to leave; the employee left copies of the proposed easement agreements in the Maders' mailbox at Mrs. Mader's request. *Id*. During the first week of May 2020, Carla Mader called Defendant Stiner to discuss the easement agreements; Mrs. Mader said she believed the agreements should have been sent to her in the mail. *Id.* at ¶ 16.

At a Township meeting on May 13, 2020, the Township opened two bids for the Cardox Road Project, the lowest of which was $565,510. *Id.* at ¶ 17. The Township Supervisors rejected both bids on May 27, 2020 and indicated that they would seek additional bids in the hope of attracting more cost-effective proposals. *Id.* at ¶ 18. During the second bidding process, Ten Mile Paving bid on the Project at $481,979.73, which was the lowest bid the Township received. *Id*. at ¶¶ 19–20. The Township Supervisors accepted that bid at a public meeting on June 24, 2020. *Id*. at ¶ 20.

In connection with the Cardox Road Project, the Township sought two different easements from the Maders: (1) a permanent easement of 500 square feet to place an outlet to receive storm water drainage from the road's surface; and (2) a temporary construction easement along the front of the Maders' property for grading and tree removal. *Id.* at ¶ 23. Pursuant to 53 P.S. § 67300, *et seq.*, the Township owns and maintains a 33-foot wide right-of-way, measured from the center line of the traveled portion of Cardox Road:

> The width of the right-of-way of a public road in townships shall not be less than thirty-three feet or more than one hundred and twenty feet, and the width of the right-of-way of alleys opened by the township as public roads shall not be less than fifteen feet. The minimum required width shall be in addition to any width required for necessary slopes in cuts or fills.

53 P.S. § 67306.  As designed, the widened, paved surface and the berm of Cardox Road will fall entirely within the Township's existing statutory right-of-way.  ECF No. 103, at ¶ 22.

After the Maders declined to voluntarily grant easements on their property to the Township, the Township filed a Declaration of Taking in the Court of Common Pleas of Washington County, Pennsylvania on July 9, 2020 to secure the permanent easement on the Maders' property by eminent domain.  *Id*. at ¶ 24.  The Township filed another Declaration of Taking in the Court of Common Pleas of Washington County, Pennsylvania on July 30, 2020, the same day that the Maders filed this action, to secure the temporary construction easement by eminent domain.  *Id*. at ¶ 25.  The Maders filed preliminary objections in both eminent domain cases to contest the Township's right to condemn the easements.  *Id*. at ¶ 26.  Both state court proceedings are ongoing.

On more than one occasion in the late-summer and fall of 2020, the Maders interfered with the Township's work on the Cardox Road Project, including its roadwork within its 33-foot right-of-way, by telling the Township's contractors that the contractors were trespassing and threatening to file lawsuits against the contractors if they failed get off the Maders' property, and, on one occasion, by calling the police.  *Id*. at ¶ 27.  On December 16, 2020, the Township filed another action in the Court of Common Pleas of Washington County, Pennsylvania, seeking an injunction to prevent the Maders from interfering with the Cardox Road Project's roadwork within the existing 33-foot right-of-way.  *Id*. at ¶ 28.  The December 16, 2020 action is also still ongoing.

As of February 10, 2021, when Defendants filed their Amended Findings of Fact and Conclusions of Law after the preliminary injunction hearing in this case, the Cardox Road Project was largely completed.  ECF No. 102, at 135:25–136:5.  With the exception of the portion of Cardox Road abutting the Maders' property, the Township removed trees and brush from the right-of-way, widened the pavement to a uniform 24-feet, and installed berms and drainage devices.

ECF No. 103, at ¶ 29.  The stretch of Cardox Road that is contiguous with the Maders' property remains unimproved due to the legal disputes between the parties.  *Id.*  Because the Township has not been able to complete the Cardox Road Project in front of the Maders' property, where Cardox Road abuts the Maders' property, its combined traveling lanes narrow from a total of 24 feet down to a varying total of between 16 and 18 feet and there are still trees within the projected path of the widened travel lanes.  *Id.* at ¶ 30;  *see also*, ECF No. 99-1, at Defs.' Ex. 9, at 3.  Additionally, there are several trees within the Township's statutory-right-of-way which obscure the view of oncoming traffic, especially now that Cardox Road has been widened on either side of the Maders' property.  *See* ECF No. 99-1, at Defs.' Ex. 9, at 3.  Before the Cardox Road Project, these trees were on the side of a narrow portion of the road;  now that the road is wider on either side of the Maders' property, these trees interfere with a greater portion of the view of oncoming traffic than before.  *See* ECF No. 99-1, at Defs.' Ex. 9, at 3.  Due to these conditions, the Township Solicitor, Defendant Sweat, and the Township Engineer, Defendant Stiner, recommended closing Cardox Road to thru traffic until the Cardox Road Project can be completed.  ECF No. 103, at ¶ 31.  Cardox Road remains closed based on their recommendation.  *Id.*  On February 10, 2021, a head-on collision occurred on Cardox Road;  police were called to the scene and one of the passengers was injured.  *See* ECF No. 111, at Ex. 3.

Despite the Township's safety concerns, one of the reasons the Maders oppose the Cardox Road Project is that they claim that the proposed storm drain will cause their property to flood.  ECF No. 39, at 7.  However, Defendant Stiner testified that, in her professional opinion, the designed drainage structure that would be placed on the Maders' property as part of the Cardox Road Project will not increase the volume or direction of surface water draining onto the Maders'

property;  rather, it would decrease the total acreage draining to the natural low point of the Maders' house. *Id.* at ¶ 35.

The Maders also attack the Township's state–court declaration of takings by claiming that the Township's actions to assert eminent domain over their property were void *ab initio* because they contend that Defendant Massari, one of the Township Supervisors who voted in favor of the Cardox Road Project, was not qualified to hold the position of Supervisor due to his prior criminal history.  Defendant Massari was a Township Supervisor from March 2020 until he resigned on September 2, 2020.  ECF No. 102, at 13:20–14:2, 21:9–16.  At an August 2020 Township meeting, two individuals noted that Defendant Massari has a criminal history and called into question his ability to sit on the Board of Supervisors under certain provisions of Pennsylvania law.  *Id.* at 16:23–17:1.  The Township Solicitor, Defendant Sweat, without deciding that Defendant Massari's criminal history barred him from serving as a Township Supervisor, nevertheless determined that it was best if Defendant Massari abstained from voting until the Township could determine whether Defendant Massari was allowed to be on the Board.  *Id.* at 17:2–6.  Ultimately, Defendant Sweat decided that Defendant Massari was permitted to serve as a Township Supervisor.  *Id.* at 17:7–10.

In addition to Defendant Massari, the Maders also challenge Defendant Charles Trax, Jr.'s ability as Township Supervisor to vote on certain issues related to the Cardox Road Project. Plaintiffs allege that Defendant Trax violated the Emoluments Clause of the United States Constitution when he voted on the Cardox Road Project.  *See* ECF No. 19, at ¶ 91.  The Maders assert that Defendant Trax had a disqualifying conflict of interest because his family owns a commercial business that abuts Cardox Road.  ECF No. 104, at 4;  ECF No. 102, at 25:23–26:2. Specifically, the Maders allege that Defendant Trax attempted to obtain an easement on the

Maders' property for an additional gas line for the commercial business, but the Maders refused him. *See* ECF No. 19, at ¶¶ 18, 38, 91; *see also* ECF No. 126, at ¶¶ 36–38. According to Plaintiffs, when the Maders denied Defendant Trax an additional easement, he claimed that "we will take it by Eminent Domain." ECF No. 126, at ¶ 37. There are two gas lines that run from Defendant Trax's family's commercial property through the Maders' property, but those gas lines were established several decades ago. ECF No. 102, at 26:24–27:1. Defendant Trax lives on Cardox Road but has no plans to develop his Cardox Road residence for commercial use. *Id*. at 27:10–13. He also does not own his Cardox Road residence. *Id.* at 31:10–12.

The Maders not only contend that the Township flouted established procedures to procure a lawful easement on their property, but that the Cardox Road Project risks permanent damage to their property by increasing the floodwater flowing to their property, among other things. ECF No. 39, at 7. During the preliminary injunction hearing on January 21, 2021, the Maders presented testimony and an opinion of a hydrology and hydraulics expert, Martha Frech. ECF No. 103, at ¶ 37. Ms. Frech completed her report after two days of evaluation and did not visit the Cardox Road site. *Id*. Instead, she relied on maps, Township Engineer Stiner's documents, and Google Earth. *Id*. In her January 18, 2021 report, Ms. Frech proposed an alternative plan for the Cardox Road Project to the engineering plan that Ms. Stiner had presented to the Township Board on April 8, 2020. *See* Pl.'s Ex. 10; Defs.' Ex. 7. The essence of Ms. Frech's proposal was to install catch basins connected to a 15-inch storm pipe on each side of Cardox Road. *Id.*, at 2. According to this plan, the storm pipe would discharge into a catch basin that would drain to a new 24-inch cross drain. *Id.* Township Engineer Stiner testified that she had considered the approach Ms. Fresh articulated when Ms. Stiner designed the Cardox Road Project, but ultimately rejected that approach because the decentralization of storm water in the chosen plan was closer to the natural

flow of surface water and the alternative plan would have cost taxpayers more money.  *Id.* at ¶ 38.

Ms. Frech testified that Ms. Stiner's ultimate design of the storm water drain for the Cardox Road

Project is more conservative in terms of protection than her own.  ECF No. 102, at 76:4–22.

According to Ms. Stiner, her design of the Cardox Road Project decreases the drainage onto the

Maders' property from 20 acres to 17.94 acres.  *Id.* at 125:9–10, 20–23.  If the Cardox Road Project

is completed as designed, some of the water that would have flowed onto the Maders' property

will stay on the road and the curbs and move on to the next set of inlets.  *Id.* at 125:17–19.

Widening Cardox Road will have the effect of helping to straighten it, making it safer and

more predictable for drivers.  *Id.* at 131:18–25.  If completed as designed, the asphalt paved portion

of Cardox Road will be entirely within the Township's existing statutory 33-foot right-of-way and

the construction project would not damage the Maders' fence or require the fence to be moved.

*Id.* at 130:14–18.  Currently, the road narrows down again at the portion of the road adjacent to

the Maders' property.  *Id.* at 133:3–10, and Defs.' Ex. 9.  The Township has not reopened Cardox

Road to public access because, unfinished, it is in an unsafe condition for travelers.  *Id.* at 135:11–

19.

## III.   Legal Standard

### A.  Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

*v. NRDC, Inc.*, 555 U.S. 7, 24 (2008);  *Greater Phila. Chamber of Commerce v. City of Phila.*, 949

F.3d 116, 133 (3d Cir. 2020) (courts should grant preliminary injunctions only in "limited

circumstances");  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.

1989).  Four factors inform a court's decision as to the issuance of a preliminary injunction:

> (1) The likelihood that the plaintiff will prevail on the merits at final hearing;  (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of;  (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued;  and (4) [that] the public interest [weighs in favor of granting the injunction.]
>
> \*\*\*
>
> Generally, the moving party must establish the first two factors and only if these 'gateway factors' are established does the district court consider the remaining two factors. The court then determines 'in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.

*Greater Phila. Chamber of Commerce*, 949 F.3d at 133 (citations omitted));  *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (citing *Del. River Port Auth v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974));  *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 Fed.Appx. 727, 732 (3d Cir. 2009);  13 Moore's Federal Practice – Civil § 65.22 (2020).

To establish a likelihood of success on the merits, the movant must "demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)." *Reilly*, 858 F.3d at 179;  *see also*, 42 Am. Jur. 2d Injunctions § 18 (2020) (explaining that to obtain a preliminary injunction, the movant must show that it is "reasonably likely" to succeed on the merits.).  Even where a movant succeeds in showing a likelihood of success on the merits, if the other three factors are not satisfied, the court should exercise its discretion to deny the preliminary injunction.  *See Winter*, 555 U.S. at 32 ("An injunction is a matter of equitable discretion;  it does not follow from success on the merits as a matter of course.").

"A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Ace Am. Ins. Co.*, 306 Fed.Appx. at 732 (citations omitted).  To establish

12

irreparable harm, the movant must show "that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly*, 858 F.3d at 179. To do so, the movant "must demonstrate a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air*, 882 F.2d at 801. The risk of irreparable harm cannot be speculative; "mere risk" of irreparable harm is insufficient—the movant must make a "clear showing of immediate irreparable injury, or a presently existing actual threat; [an injunction] may not be used simply to eliminate the possibility of a remote future injury, or a future invasion of rights[.]" *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980); *Hadeed v. Advanced Vascular Res. of Johnstown, LLC*, Case No. 3:15-cv-22, 2016 U.S. Dist. LEXIS 169709 at *8 (W.D. Pa. Dec. 8, 2016).

"In the absence of exceptional circumstances, economic loss does not qualify as irreparable harm [and] '[a]n inability to precisely measure financial harm does not make that harm irreparable or immeasurable.'" *Hadeed*, 2016 U.S. Dist. LEXIS 169709 at *7–8 (quoting *Acierno v. New Castle Cty.*, 40 F.3d 645, 655 (3d Cir. 1994)); *see also*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

## B. Anti-Injunction Act

According to the Complaint, as amended, Defendants flouted numerous statutory provisions and disregarded Plaintiff's procedural rights to take the Maders' property to serve their own agenda. *See generally*, ECF Nos. 19 and 126. Fearing what Plaintiffs believe to be irreparable harm to their property rights, procedural rights, personal property (horses), and real property,

Plaintiffs filed a motion for preliminary injunction seeking to stop the Township and its representatives from violating their rights and otherwise proceeding with the Cardox Road Project. *See generally*, ECF No. 39.  Because the Maders are *pro se*, the Court reads their filings broadly. *See Haines v. Kerner*, 404 U.S. 519 (1972).  Read broadly, the Maders' Motion for Preliminary Injunction, ECF No. 39, asks the Court to enjoin the Township and its representatives from pursuing the use of the Maders' property for the Cardox Road Project in light of the alleged due process violations Defendants committed in their pursuit of the Cardox Road Project.  *See generally*, ECF No. 39.

The first question before the Court is whether the Court has the ability to grant the Mader Plaintiffs' requested relief.  In their pursuit of the Cardox Road Project, Defendants filed multiple Declarations of Taking in the Court of Common Pleas of Washington County, Pennsylvania, asserting eminent domain over Plaintiffs' property.  *See e.g., Union Twp. v. Mader*, Docket No. C-63-20203284 (Pa. C.P. Washington Cty. filed July 9, 2020);  *Union Twp. v. Mader*, Docket No. C-63-20203712 (Pa. C.P. Washington Cty. filed July 30, 2020); *see also*, ECF No. 99-1, at Joint Exs. 6 and 7.

If this Court were to issue the Maders' requested injunction, such injunction would functionally enjoin these state-court proceedings.  Thus, the Court must consider whether doing so would run afoul of the Anti-Injunction Act, 28 U.S.C. § 2238.  Statutory prohibitions against federal courts staying state-court actions have existed for almost as long as the federal courts themselves.  *See* 11A Wright & Miller, Federal Practice & Procedure, § 2942 *Availability of Injunctive Relief- In General* (3d ed. October 2020) (citing Act of March 2, 1793, ch. 22, § 5, 1 Stat. 334).  In 1948, Congress passed the Anti-Injunction Act, which codified the exceptions to the rule against enjoining state proceedings: "A court of the United States may not grant an injunction

to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The Anti-Injunction Act "is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." *Vendo Co. v. Lektro-Vend Corp.*, 443 U.S. 623, 630 (1977). "The Act's purpose is to forestall the inevitable friction between state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *Id.* Since its 1972 case, *Mitchum v. Foster*, 407 U.S. 225, the Supreme Court has acknowledged that § 1983 actions inherently "interpose the federal courts between the States and the people, as the guardians of the people's federal rights" such that § 1983 claims qualify as an "expressly authorized" exception to the Anti-Injunction Act. 407 U.S. at 242–43. The Court reasoned that Congress explicitly authorized federal courts to grant injunctions of state-court proceedings in the face of § 1983 claims, because, without that authority, the Anti-Injunction Act would leave the federal courts powerless to grant relief in § 1983 cases. Therefore, the Anti-Injunction Act does not bar the relief the Mader Plaintiffs are requesting here.

### C. *Younger* Abstention

Even though the Anti-Injunction Act does not expressly forbid this Court from granting the Maders' requested injunction, as explained in *Mitchum*, that is not the end of the inquiry. Next, the Court will consider whether it should abstain under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny rely on "traditional principles of equity and comity," *Anthony Gerald Council*, 316 F.3d 412, 418 (3d Cir. 2003), and stand for the proposition that "abstention is required if there are continuing state proceedings which are judicial in nature, which implicate important state interests, and which afford an adequate opportunity for the [parties] to

present [their] federal claims." *Gittens v. Kelly*, 790 Fed.Appx. 439, 441 (3d Cir. 2019).  The Third

Circuit set forth the following test for when *Younger* abstention is appropriate:

> (1) there must be ongoing state proceedings that are judicial in
> nature;  (2) the state proceedings must implicate important state
> interests;  and (3) the state proceedings must afford an adequate
> opportunity to raise federal claims.  Even if the necessary predicates
> exist, however, *Younger* abstention is not appropriate if the federal
> plaintiff can establish that (1) the state proceedings are being
> undertaken in bad faith or for purposes of harassment or (2) some
> other extraordinary circumstances exist . . . such that deference to
> the state proceeding will present a significant and immediate
> potential for irreparable harm to the federal interests asserted.

*Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (cleaned-up), *accord. Anthony*, 316 F.3d at 418.

The *Younger* doctrine is not reserved exclusively for abstaining from deciding an entire

case.  Federal courts have used the *Younger* doctrine to abstain from granting requests for

preliminary injunctions where a pending state action relates to important state interests and the

proceeding affords the movant adequate relief.  *See e.g., Rose v. York Cty.*, 1:13-cv-2056, 2013

U.S. Dist. LEXIS 115855 (M.D. Pa. Aug. 6, 2013);  *see also*, *State Trooper Fraternal Ass'n v.

New Jersey*, 2009 U.S. Dist. LEXIS 117045, at *35 (D.N.J. Dec. 16, 2009) (Abstaining from the

case as a whole on *Younger* grounds and stating that with respect to the preliminary injunction,

"[e]ven if the court were to decline to abstain on *Younger* grounds, the Court would find that the

same considerations supporting *Younger* abstention also counsel against the plaintiff's application

for a preliminary injunction.").  Where the elements supporting *Younger* abstention exist, "the

decision to abstain rests in the sound discretion of [the] court."  *Rose*, 2013 U.S. Dist. LEXIS

115855, at *12 (citing *Lui v. Comm'n on Adult Entm't Establishments*, 369 F.3d 319, 325 (3d Cir.

2004)).  As in *Anthony, Rose,* and *Gittens*, *Younger* abstention is appropriate in this case.

First, the parties identified multiple ongoing proceedings regarding the Township's efforts

to obtain rights and access to the Maders' property for use in the Cardox Road Project.  *See e.g.,*

*Union Twp. v. Mader*, Docket No. C-63-20203284 (Pa. C.P. Washington Cty. filed July 9, 2020); and *Union Twp. v. Mader*, Docket No. C-63-20203712 (Pa. C.P. Washington Cty. filed July 30, 2020). In both cases, the Township filed a declaration of taking to obtain an easement on the Maders' property in pursuit of the Cardox Road Project. Pursuant to the Pennsylvania Eminent Domain Code, the state court in the county where the property to-be-condemned is located is the exclusive venue for condemnation proceedings. 26 Pa. C.S. § 301(a). The Pennsylvania legislature specifically provided a procedure for condemnees to challenge the legal sufficiency of an eminent domain condemnation;  condemnees who challenge a taking shall file preliminary objections to the declaration of taking. *See* 26 Pa. C.S. § 306. The Mader Plaintiffs did just that when they filed preliminary objections in both state-court proceedings. *See Union Twp. v. Mader*, Docket No. C-63-20203284 (Pa. C.P. Washington filed July 9, 2020);  and *Union Twp. v. Mader*, Docket No. C-63-20203712 (Pa. C.P. Washington filed July 30, 2020). Those actions are ongoing and will adjudicate the legal sufficiency of the Township's easements on the Maders' property.

Second, the state proceedings implicate an important state interest. Federal courts recognize that the use of a government's power of eminent domain implicates important state interests and that, under the *Younger* doctrine, "federal courts have generally resisted entangling themselves in such issues." *See e.g., Lauxmont Holdings v. Cty. of York*, No. 4:07-cv-1980, 2008 U.S. Dist. LEXIS 45932 (M.D. Pa. June 11, 2008) (citing *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 78 (1959) (stating that eminent domain "is intimately involved with sovereign prerogative") and *Rucci v. Cranberry Twp.*, 130 Fed.Appx. 572, 577 (3d Cir. 2005) ("eminent domain is [a] distinctly state-law matter")).

Finally, the state court proceedings will afford the Maders adequate opportunity to raise their federal claims. The core of the Maders' motion for preliminary injunction is that the

Township's declarations of taking are legally insufficient and, therefore, violate their due process rights.  *See generally*, ECF No. 39.  The state condemnation proceedings provide the Maders with an adequate opportunity to raise their federal claims of due process violations given that the Maders can and indeed have filed preliminary objections to challenge the sufficiency of process as to both declarations of taking.  In fact, by legislating that the state court where the property subject to eminent domain is located is the proper venue for eminent domain proceedings, and by creating a procedure to challenge the legal sufficiency of eminent domain takings in that state court, the Pennsylvania legislature demonstrated its intent that the state courts where the condemned property is located would be venue for legal challenges to the sufficiency of a declaration of eminent domain taking.  *See* 26 Pa. C.S. §§ 301(a), 306.  Preliminary objections under § 306 are designed to be the exclusive method of challenging a declaration of taking.  *See In re Condemnation Proceeding by S. Whitehall Twp. Auth.*, 940 A.2d 624, 627 n.2 (Pa. Commw. Ct. 2008).  The Maders have already availed themselves of the state court procedure to challenge the Township's declarations of taking by filing preliminary objections against both the Township's declarations of taking.  Furthermore, under the Eminent Domain Code, condemnors, generally, must post security to give effect to the condemnation to compensate the condemnee for damages. *See* 2 Pa. C.S. § 33.  Where, as here, the condemnor has the power of taxation, however, the condemnor is not required to post a bond;  rather, the "funds raised or authorized by law to be raised by the power of taxation of the condemnor shall be deemed pledged and are made security for the payment of damages determined by law."  26 Pa. C.S. § 303(b)(2).  Therefore, the Maders are not at risk of being deprived of an adequate opportunity to raise their federal claims or recover for them, if successful.

Having established that *Younger* abstention is appropriate, the Court must next consider whether the Mader Plaintiffs have established that Defendants are undertaking the state court actions in bad faith, for the purposes of harassing Plaintiffs, or other extraordinary circumstances exist such that deferring to the state proceedings would "present a significant and immediate potential for irreparable harm to the federal interests asserted." *Anthony*, 316 F.3d at 418. The Maders have not made that requisite showing here. The record indicates that Defendants had reason to consider the un-improved conditions of Cardox Road to be dangerous, including that residents of the Township, including the Plaintiffs, petitioned the Township to install traffic-calming devices in aid of protecting the citizenry from the risk of the road. *See* ECF No. 103, at ¶ 13; ECF No. 99-1, at Joint Exs. 1 and 4. To improve the safety conditions of Cardox Road, the Township undertook the Cardox Road Project, which involved discussing the matter at Township meetings, *see e.g.,* ECF No. 99-1, at Joint Ex. 1; ECF No. 99-1, at Def.'s Ex. 4, at 2, and attempting to obtain voluntary easements on the residents' properties along Cardox Road. *See* ECF No. 102, at 164:8–17. Not only did the Maders refuse to grant the Township a voluntary easement, the Maders interfered the Township's contractors who were working on the project, including calling the police. *See* Second Am. Compl., ECF No. 126, at ¶¶ 106–109. Unable to obtain voluntary easements from the Maders, the Township filed its declaration of taking with respect to the permanent easement for a storm water drainage pipe before Plaintiffs filed this action, and its declaration of taking with respect to the temporary construction easement on the same day Plaintiffs filed this action. *See* ECF No. 99-1, at Joint Exs. 6 and 7. Therefore, the Court finds that the state court actions that predicate *Younger* abstention were not filed in bad faith or for the purposes of harassing the Maders. The Maders have not presented evidence of any extraordinary

circumstances that convince the Court that abstaining would pose a risk of substantial and irreparable harm to the Maders' federal interests.

Therefore, the Maders' Motion for Preliminary Injunction satisfies the legal requirements of *Younger* abstention, resting the decision to abstain in the sound discretion of this Court. *Rose*, 2013 U.S. Dist. LEXIS 115855, at *12. Absent evidence of Defendant's bad faith, harassing motives, or other extraordinary circumstances, this Court finds that it is in the interest of comity to exercise its discretion to abstain under *Younger* in deference to the state proceedings.

## IV.  Conclusion

For the reasons set forth herein, given the pending eminent domain proceedings in the Court of Common Pleas of Washington County, Pennsylvania, and Pennsylvania's interest in its judges presiding over eminent domain cases, the principles of comity counsel in favor of this Court exercising its discretion to abstain from reaching the merits of the Maders' Motion for Preliminary Injunction, ECF. No. 39, and to deny the same under *Younger* and its progeny.

An appropriate order will follow.


DATED this 6th day of April, 2021.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

Plaintiffs Mieczyslaw Gniadek and Sabine Gniadek via U.S. Mail