IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLA MADER, MARTIN E. MADER, MIECZYSLAW GNIADEK, SABINE GNIADEK, | ) ) ) ) | 2:20-CV-01138-CCW |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| UNION TOWNSHIP, HEATHER DAERR, CHARLES TRAX, JR., RICHARD LAWSON, FRANK L. MASSARI, GARY SWEAT, KEVIN DAERR, JESSICA STINER, JARROD D'AMICO, KRIS BOCKSTOCE, MICHAEL E. CRUNY, JAMES HARSHMAN, TRAVIS RICHMOND, and DOES 1–50, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION ON DEFENDANTS' MOTION TO DISMISS THE GNIADEKS' FIRST AMENDED COMPLAINT

Before the Court is a Motion to Dismiss the Gniadek Plaintiffs' claims in the First Amended Complaint. ECF No. 142. For the following reasons, the Motion will be granted.

### I.   Procedural History

Plaintiffs in this case are two married couples—the Maders and the Gniadeks—each of whom is proceeding *pro se*. ECF No. 19 at ¶¶ 10–15. Both couples reside on Cardox Road, a connector road adjacent to Route 88 in Union Township, Pennsylvania. *Id.* at ¶¶ 32, 54, 73; ECF No. 20-4; ECF No. 20-10. Defendants are Union Township and various employees, officials, contractors, and/or members of the Board of Supervisors of the Township. *See generally*, ECF No. 19 at ¶¶ 17–27.

The Maders and the Gniadeks together filed a 7-count Complaint, ECF No. 1, and then a 26-count First Amended Complaint, ECF No. 19, claiming that Union Township and those acting on its behalf, among other things, took their property without due process, excluded them from public meetings, misused legal procedure, intentionally inflicted emotional distress on Plaintiffs, negligently disregarded their public duties, trespassed, defamed Plaintiffs, and violated Plaintiffs' First Amendment rights.  *See* generally, ECF No. 19.  The Mader Plaintiffs then filed a Second Amended Complaint, ECF No. 126, which the Gniadeks did not join.  *See* ECF No. 126.

The First Amended Complaint remains the operative complaint as to the Gniadeks' claims. For clarity, because the Mader Plaintiffs' allegations in the First Amended Complaint were superseded by the their filing of the Second Amended Complaint, Defendants and the Gniadeks stipulated as to which of the factual allegations and legal claims in the First Amended Complaint the Gniadeks are maintaining.  ECF No. 131.

The Gniadeks' claims are set forth in Counts XII, XIII, XIV, XV, XVII, XXI, and XXVI of the First Amended Complaint.  *See generally* ECF No. 19;  ECF No. 131 at ¶ 9.  They include alleged violations of their federal constitutional rights, pursuant to 42 U.S.C. § 1983 (*see, e.g.*, Counts XIII and XIV), as well as state law claims for, e.g., intentional infliction of emotional distress (*see, e.g.,* Count XII).  The Court has federal question jurisdiction over the § 1983 claims pursuant to 28 U.S.C. § 1331, and will exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The First Amended Complaint names the following Defendants[1]:  Union Township, Kris Bockstoce, Michael Cruny, Heather Daerr, Kevin Daerr, Richard Lawson, Frank Massari, Jessica Stiner, Gary Sweat, Charles Trax, Jr., (collectively "Moving Defendants").  *See generally*, ECF No. 131.  The Gniadeks' Count XIII alleges a violation of § 1983 against "Township Officials," which, if read broadly, could potentially include the Daerr Defendants, and Defendants Cruny, Lawson, Massari, Stiner, Sweat, and Trax.  ECF No. 19 at ¶ 126.  Moving Defendants seek to dismiss the Gniadeks' claims in full.  *See* ECF No. 142.  Their Motion to Dismiss is fully briefed and ripe for disposition.  For the reasons set forth below, Moving Defendants' Motion will be GRANTED.

## I.    Factual Background

As previously mentioned, the Gniadeks live on Cardox Road in Union Township, Pennsylvania.  ECF No. 20-10.  According to the First Amended Complaint, on or around June 2, 2020, the Gniadeks informed their neighbors, the Maders, that the Gniadeks had received a "sham" easement from Defendant Stiner, Union Township's engineer, which offered the Gniadeks $1.00 as compensation for easements on their property for use in the Township's project to widen Cardox Road to a uniform width (the "Cardox Road Project").  ECF No. 19 at ¶¶ 73, 23.

As Plaintiffs describe it, on or around June 2, 2020, Mr. Gniadek approached Defendant Trax, who also resides on Cardox Road, and who is on the Board of Supervisors of Union Township, while Defendant Trax was conversing with another of their mutual neighbors.  *Id.* at ¶¶ 18, 74–75.  Mr. Gniadek was "upset" and approached Defendant Trax, who was "very evasive

---

[1] Plaintiffs named former-defendant Linda Roach in the First Amended Complaint, but she was dismissed from the case by stipulation on February 22, 2021 and is therefore not a remaining Defendant in the case.  ECF No. 107. Defendants Harshman and Richmond were named for the first time by the Mader Plaintiffs in the Second Amended Complaint.  ECF No. 126. Neither Defendant Harshman nor Defendant Richmond is a named defendant in the First Amended Complaint.

and unclear" when Mr. Gniadek asked for an explanation about the Cardox Road Project.  *Id.* at ¶ 75.  Mr. Gniadek "suggested he may need the services of an attorney and would probably pursue such individual."  *Id.*  Defendant Trax stated that it would not be in Mr. Gniadek's best interest to hire an attorney.  *Id.*  Mr. Gniadek reminded Defendant Trax of "past exchanges" with what Mr. Gniadek referred to as previous "township councils" and Defendant Trax responded "[w]e know all about you and we have compiled a book of information about you."  *Id.*  Plaintiffs allege that "Mr. Gniadek was intimidated and emotionally distressed by this and asked [Defendant Trax] if he would like to share any of the information."  *Id.*  Mr. Gniadek then asked if he was being spied on, a question that Defendant Trax ignored.  *Id.*

According to the Gniadeks, the Township has a history of transparency issues, such as failing to post minutes from Township meetings, failing to provide the public with at least 24-hours' notice of changes of time or location of public Township meetings, and being slow to respond to requests for information under Pennsylvania's Right to Know Law.  *Id.* at ¶ 76–77. Some of the Township residents organized a civic group to hold the Township accountable to the public.  *Id.* at 78.  The civic group, spearheaded by Mrs. Mader, wrote a self-proclaimed "Cease and Desist" letter and a notice of claim to the Township and the Board of Supervisors to address possible violations of the Pennsylvania Sunshine Act and to address the harassment Mrs. Mader and the civic group perceived to be coming from the Township and its officials.  *Id.* at ¶ 81–82.

According to Plaintiffs, the Township ignored the Cease and Desist letter and Notice of Claim by prohibiting Plaintiffs and other taxpayers from entering the building where the Planning Department's June 24, 2020 4:00 p.m. meeting was being held.  *Id.* at ¶ 83.  At 5:00 p.m. on June 24, 2020, after the 4:00 p.m. Planning Department meeting adjourned, Defendant Lawson, who serves as a Township Supervisor, Treasurer, and Roadmaster, unlocked the doors to the building

where the meeting was held for the Deputy Sheriff of Washington County, Pennsylvania. *Id*. Defendant Cruny, who is an attorney for the Township, *id.* at ¶ 27, exited the building and stood outside with police and allowed only six people at a time into the building, citing COVID-19 restrictions. *Id*. at ¶ 84. During the 5:00 p.m. Township Board meeting on June 24, 2020, the Township Board voted to take action against several non-plaintiffs' property within the Township which Plaintiffs describe as "violating due process rights for vacating, condemning, evicting, and selling seized property of residents Anna Banahasky, Richard Curry, and another Rankintown Road resident." *Id*. at ¶ 86.

Plaintiffs also allege that the Township held another Planning Department meeting on July 8, 2020 at 4:00 pm. *Id*. at ¶ 87. The Township had a surveillance van parked next to where Plaintiffs were peacefully gathered with others outside of the building where the meeting was being held. *Id*. Defendant Kevin Daerr, a Township member of the Peters Creek Sanitary Authority for Union Township, *id.* at ¶ 21, "blocked the municipal building front entrance" and videotaped the crowd "to not allow taxpayers into the meeting." *Id*. Union Township officials posted on the Union Township Facebook page that the July 8, 2020 Planning Department meeting would be available by Zoom videoconference "[h]owever, they did not open up the meeting to the public to physically attend until 4 pm with their Facebook post. It was actually posted as a comment on the Zoom announcement post, which is not readily visible, that the meeting was now an in-person meeting." *Id*. Plaintiffs allege that because they attempted to attend the meeting in-person, they were unable to logon to the meeting to attend by videoconference. *Id.* According to Plaintiffs, the Zoom meeting was moderated by Defendant Massari, who was then a Township Supervisor as well as the Township's Roadmaster. *Id*. at ¶¶ 20, 88. Mrs. Mader asked the Sheriff and Monongahela Police Chief to let the Plaintiffs into the building for the Planning Department

meeting.  *Id.* at ¶ 89.  Defendant Lawson, a Township Supervisor, Treasure, and Roadmaster, *id.* at ¶ 19, unlocked the door, but "Township Officials then let some [people] in but would not allow more than [three] or [four] taxpayers in at a time." *Id.* at ¶ 89.  The First Amended Complaint is silent regarding whether the Gniadeks were able to attend any part of the July 8, 2020 Planning Department or Township meetings.  *See* generally, ECF No. 19.  Plaintiffs allege that "Township Officials claimed that due to COVID-19 they could not allow more than a total of [nine] people in, despite that Washington County being in the 'green phase.'  However, Township Officials were not wearing masks and did not require them for entry into the building."  *Id.* at ¶ 90.

Plaintiffs allege that on July 29, 2020, the Township held an emergency meeting at 8:00 a.m. through which the Board, consisting of Defendants Mrs. Daerr, Trax, Lawson and Massari, voted to establish an easement on the Gniadek's property, along with the properties of several other Cardox Road residents, via eminent domain.  ECF No. 19 at ¶¶ 103-105.

On July 30, 2020, the Township filed a Declaration of Taking in the Court of Common Pleas of Washington County, Pennsylvania, establishing an easement on the Gniadeks' Cardox Road property via eminent domain.  *See Union Twp. v. Gniadek.*, C-63-CV-2020-3711, at BL-1 (Pa. C.P. Washington filed July 30, 2020).  The Township also filed an action for declaratory judgment in the Court of Common Pleas of Washington County, Pennsylvania seeking to establish its rights with respect to the Maders' and the Gniadeks' properties on December 16, 2020.  *See Union Twp. v. Mader*, C-63-CV-2020-7340 (Pa. C.P. Washington Dec. 16, 2020).  The state court issued a final order in the declaratory judgment action on May 21, 2021 that "Union Township has established its right to improve Cardox Road and that any road improvement can be performed within the right-of-way."  ECF No. 164-7.

## II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  Courts must construe *pro se* complaints, including *pro se* § 1983 claims, liberally so "so as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir 2004).  However, notwithstanding the latitude courts must give *pro*

*se* litigants, they are not free of their obligation under the Federal Rules to allege sufficient facts to support cognizable legal claims. *See e.g.*, *Noble v.* Wetzel, 2:18-cv-01160, 2020 U.S. Dist. LEXIS at \*9 (W.D. Pa. May 11, 2020) (adopted as opinion of the court on June 15, 2020, ECF No. 95) (citing Taylor *v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Where *pro se* plaintiffs raise violations of civil rights, the court should grant them leave to amend unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*., 483 F.3d 247, 251 (3d Cir. 2007).

## III.   Analysis

### A.   Plaintiffs' Federal Claims

#### 1.  Plaintiffs' § 1983 and "Deprivation of Rights" Claims Fail

A § 1983 claim is the mechanism by individuals can recover when a person acting under color of law violates their federal rights.  42 U.S.C. § 1983.  An actionable § 1983 claim has two elements:  (1) the conduct complained of was committed by a person acting under color of state law;  and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right.  *Dice v. Johnson*, 711 F.Supp.2d 340, 357 (M.D. Pa. 2010).  The Court will address whether each of the Plaintiffs' four § 1983 claims satisfies this standard.

The First Amended Complaint includes two federal claims, Counts XIII and XIV, expressly pleaded under 42 U.S.C. § 1983 for violations of the Gniadeks' constitutional rights, along with two other claims, Counts XV and XVII, which, although not expressly styled as § 1983 claims, nevertheless assert violations of the Gniadeks' federal rights by individuals allegedly acting under color of law.  When addressing *pro se* plaintiffs' civil rights allegations, the Court "must apply the applicable law, irrespective of whether the *pro se* litigant mentioned in by name,"

and therefore the Court will also analyze this latter category of claim under the § 1983 framework. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002).

**2. Analysis of Plaintiffs' Count XIII, XVI, XV, and XVII § 1983 Claims**

    **a) Count XIII Fails**

Count XIII of the First Amended Complaint is a § 1983 claim against "Township Officials" whom Plaintiffs allege worked "in concert together to deter, suppress, and deny [Plaintiffs], the right of disclosure of agenda, meeting minutes, feasible future items, by not following protocol, and procedure, not clearly established law and also the [Pennsylvania] Sunshine Act. Therefore, denying Plaintiffs' [Ninth] Amendment [r]ights." ECF No. 19 at Count XIII. Moving Defendants argue that Count XIII fails to state a claim because the Ninth Amendment and that Amendment is not a source of individual Constitutional rights. ECF No. 144 at 5. The Court agrees.

Plaintiffs' claim in Count XIII fails for two reasons. First, Plaintiffs attempt to use § 1983 to seek redress for violations of Pennsylvania state laws, including the Sunshine Act, arguing that by violating those laws, the Defendants ran afoul Plaintiffs' Ninth Amendment federal constitutional rights. ECF No. 19 at Count XIII. However, Plaintiffs' theory fails because the express purpose of § 1983 is to provide a mechanism for redressing violations of federal rights— not state rights. *See* 42 U.S.C. § 1983; *Airgood v. Twp. of Pine*, Civil Action No. 14-1249, 2015 U.S. Dist. LEXIS at *19–220 (W.D. Pa. July 2, 2015) (citing *Rose v. Bartle*, 871F.2d 331, 347 (3d Cir. 1989) ("It is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief.")). Second, Plaintiffs cannot base a § 1983 claims on an alleged violation of the federal Constitution's Ninth Amendment, because the Ninth Amendment "does not contain within itself any guarantee of a right or a proscription of an infringement. . . ." *Bervinchak v. E. Hempfield Twp.*, 2021 U.S. Dist. LEXIS 114786, at *9 (E.D. Pa. June 21, 2021) (citing *Niclette v.*

Caruso, 315 F.Supp.2d 710, 718 (W.D. Pa. 2003)).  *See also, Ortiz v. City of New York*, 11 Civ.

7919 (JMF), 2013 U.S. Dist. LEXIS 136897 (S.D.N.Y. Sept. 24, 2013); *see also*, *Bamigbade v.

City of Newark*, Civil Action No. 04-4419, 2005 U.S. Dist. LEXIS 53406, at *3 (D.N.J. Aug. 12,

2005) ("A person cannot claim a right that exists solely under the Ninth Amendment.").

Because Plaintiffs have not pleaded a violation of any federal right that could predicate a

§ 1983 claim in Count XIII[2], it must be dismissed.  Though, generally speaking, district courts

must provide *pro se* plaintiffs with leave to amend their civil rights claims, even when leave is not

specifically requested, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*., 482 F.3d 247,

251 (3d Cir. 2007), they need not provide leave to amend if the amendment would be futile, *id*.

For purposes of a leave to amend analysis, "futility" "means that the complaint, as amended, would

still fail to state a claim upon which relief could be granted."  *Culinary Serv. of Del. Vall.*, *Inc. v.

Borough of* Yardley, 385 Fed.Appx. 135, 146 (3d Cir. 2010).  Because § 1983 does not provide

redress for violations of state law or the Ninth Amendment, and no other factual allegations will

affect that analysis, any proposed amendment would be futile and the Court will dismiss Count

XIII with prejudice and without leave to amend.

### b)  **Plaintiffs' Count XIV Fails**

Plaintiffs' Count XIV claim is a § 1983 claim against "Township Officials," and,

specifically, Mrs. Daerr, Mr. Daerr, Defendants Trax, Lawson, Massari, and Sweat, claiming that

they "did deter, suppress, and deny [Plaintiffs] from entry into a public meeting and right to

assemble inside meeting, right to speak in a public forum, June 24, 2020, violating their" First,

---

[2] To the extent that Count XIII reflects a § 1983 conspiracy claim, it necessarily fails because a § 1983 conspiracy
claim requires the plaintiffs to show "that two or more conspirators reached an agreement to deprive [them] of a
constitutional right under color of state law."  *Pardue v. Gray*, 136 Fed.Appx. 539, 533 (3d Cir. 2005);  *see also*,
*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280 (3d Cir. 2018).  Because violations of state law do not implicate federal
Constitutional or statutory rights and the Ninth Amendment does not confer an individual right that is protectable by
§ 1983, no § 1983 liability can stem from violating those provisions, much less conspiring to do so.

Ninth, and Fourteenth Amendment rights and due process rights.  ECF No. 19 at ¶ 127.  Moving

Defendants argue that Count XIV fails (1) against all but Defendant Lawson because Plaintiffs did

not specifically plead individual involvement by Moving Defendants named in this Count;  (2) the

named Defendants' conduct, as alleged, did not violate the Plaintiffs' Constitutional rights;  and

(3) Count XIV fails against all Defendants because each has qualified immunity.  ECF No. 144 at

3.

### i.    Defendants' Lack of Personal Involvement

Moving Defendants are correct that § 1983 claims require allegations of personal

involvement on the part of the defendant in the violation of a plaintiff's federal rights.  *See Ashcroft*

*v. Iqbal*, 566 U.S. 662 (2009) (in § 1983 cases, "a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution.");

*see also*, *Anela v. City of Wildwood*, 790 F.2d 1063, 1067–68 (3d Cir. 1986) (defendants "may not

be held liable under section 1983 merely because they were members of a group which some other

members were guilty of abuses).  Further,

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs;  liability cannot be predicated solely on the
> operation of *respondeat superior*.  Personal involvement can be
> shown through allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of participation or actual
> knowledge and acquiescence, however, must be made with
> appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988).  Here, Plaintiffs' § 1983 claim against

the blanket group of "Township Officials" fails for lack of specificity because it leaves Defendants

to guess which, if any, Township officials, beyond those specifically identified in the Count, are

allegedly involved.  Of the defendants specifically named in Count XIV, Plaintiffs do not identify,

except with respect to Defendant Lawson, what personal direction or actual knowledge and

acquiescence the Defendants had with respect to the conduct alleged in this Count.  Defendants should not have to guess which defendants a cause of action is targeted at or the theory of liability. *See Weidenhof v. Zimmer, Inc.*, Civil Action No. 1:16-cv-2105, 2018 U.S. Dist. LEXIS 218033, at *30–31 (M.D. Pa. Dec. 28, 2018);  *Murphy v. Office of Disciplinary* Counsel, Civil Action No. 17-1239, 2019 U.S. Dist. LEXIS 167650, at *73 (E.D. Pa. Sept. 30, 2019);  *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 234 (D.N.J. Mar. 3, 2003).  The First Amended Complaint alleges that Defendant Lawson, a member of the Township Board, eventually opened the door to the meeting, let Defendant Cruny, one of the Township's solicitors, outside and Defendant Cruny then let the public in six people at a time.  ECF No. 19 at ¶ 84.  These allegations are sufficient to allege Mr. Lawson's involvement.  However, the First Amended Complaint is devoid of facts that show how the Daerr Defendants, Defendant Trax or Defendant Sweat were personally involved in excluding the public from the June 24, 2020 meeting.  The Court would normally permit Plaintiffs leave to amend their complaint and add further support to their allegations against Defendants in Count XIV, but for the reasons that follow, doing so would be futile.

> ii. **Plaintiffs Allege a Plausible Claim for Violation of their First Amendment Rights**

In Count XIV, Plaintiffs have stated a plausible claim under Section 1983 that their First Amendment rights were violated with respect to access to the June 24, 2020 Township meeting. The First Amendment provides, in relevant part: "Congress shall pass no law . . . abridging the freedom of speech, or of the press;  or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Fourteenth Amendment makes the First Amendment applicable against the states as well.[3]  *Murdock v. Pennsylvania*, 319

---

[3] To the extent that Count XIV alleges a violation of the Ninth Amendment, that claim fails because, as previously discussed, the Ninth Amendment does not provide a source of individual constitutional rights.

U.S. 105 (1943).  Yet, even fundamental rights, such as the First Amendment "political freedoms" of free speech, petition and assembly, are not absolute;  for instance, the government can impose non-content based restrictions on First Amendment political freedoms that are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication."  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). Here, the Second Amended Complaint alleges that the Township prohibited the public, including the Gniadeks, from attending the Town meetings generally, not on the basis of any particular content, and not targeting any specific group.

Defendants contend that the Township limited in-person access to the June 24, 2020 Township meeting as a COVID-19 mitigation effort.  ECF No. 144 at 2.  Defendants also contend that the Township provided the public, including Plaintiffs, with the option of participating in the Township meeting remotely via videoconference.  ECF No. 144 at 7.  Despite this, Plaintiffs contend that they "had no other means [apart from in-person] to attend [the June 24, 2020] meeting."  ECF No. 157 at ¶ 8.  Certainly, COVID-19 mitigation is a significant government interest.  But restrictions on participation in the Township meeting must be narrowly tailored to that government interest and must leave open ample alternative channels of communication.  *Perry Educ. Ass'n*, 460 U.S. at 45.  Defendants' argument that the Township's restriction of public access to the in-person gathering was necessary for COVID-19 mitigation is unavailing at this early procedural juncture in the case:  such restriction is both over inclusive in that there were likely less restrictive ways to mitigate COVID-19 risk such as holding the meeting outside, providing public access with social distancing, etc., and underinclusive in that the Board still met in person. Moreover, there is a question whether the Township provided "ample" alternative channels of communication.  Although Defendants claim that the public could have participated in the meeting

via videoconference, Plaintiffs allege they did not have such alternate access.  *See* ECF No. 157 at

¶ 8.  The Court must take the Amended Complaint's well-pleaded factual allegations as true and

construe them in the light most favorable to Plaintiffs, as the nonmovants, and make all reasonable

inferences in their favor.  *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  Under this standard,

Plaintiffs have stated a plausible claim that their First Amendment rights were violated with respect

to access to the June 24, 2020 Township meeting.

### iii.    Defendants are Entitled to Qualified Immunity

Having found that Plaintiffs have stated a plausible 1983 claim in Count XIV for violation

of their First Amendment rights, we next examine whether Defendants are entitled to qualified

immunity on this claim.

"Qualified immunity protects government officials 'from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Sivella v. Twp. of Lyndhurst*, No. 20-2342, 2021 U.S. App.

LEXIS 22915, at *6 (3d Cir. Aug. 3, 2021) (quoting *Bayer v. Monroe Cty. Children & Youth

Servs.,* 577 F.3d 186, 191 (3d Cir. 2009)).  "'Clearly established' means that 'there must be

sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put

defendant on notice that his or her conduct was constitutionally prohibited.'" *Sivella*, 2021 U.S.

App. LEXIS 22915, at * 6 (quoting *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d

164, 169 (3d Cir. 2016)).  Absent applicable precedent, only a "robust consensus of cases of

persuasive authority" in courts of appeal could clearly establish a right for purposes of qualified

immunity. *Sivella*, 2021 U.S. App. LEXIS 22915, at *6 (citing *Mammaro*, 814 F.3d at 169).

At the time Defendants allegedly stopped the public from entering the building for the

township meeting on June 24, 2020, the COVID-19 global pandemic was ongoing.  It was not

14

clear in that context, where the Township believed it made the meeting available virtually, that prohibiting in-person access to the meeting violated a clearly established right of which a reasonable township official would have been aware.  The right Plaintiffs allege Defendant violated is a right to be free from a COVID-19 mitigation restriction to their First Amendment rights that would keep them from physically attending a Township meeting.  At the time, any such right was not so clearly established that Defendants would have been on notice that by keeping the public from physically attending the Township meeting, as opposed to attending via videoconference, they would be violating the Plaintiffs' rights.  At the time of the June 24, 2020 meeting, Washington County, Pennsylvania was in the "Green Phase" of Pennsylvania's staged-reopening process.  *See* Press Release, Governor Tom Wolf, Reopening Phase Orders Updated to Include 10 Additional Counties Moving to Yellow and 16 Green on June 5 (June 4, 2020) (on file with the author)[45]. The Green Phase relaxed some of the restrictions in place during the Red and Yellow Phases, but it was not a return to normalcy.  The Green Phase still (a) limited public gatherings based using a proscribed occupancy calculator; mandated masks in all public spaces; and required Pennsylvanians to telework where doing so was feasible, among other things.  *See* Press Release, Governor Tom Wolf, Process to Reopen Pennsylvania (last updated Nov. 19, 2020) (on file with the author).[6]  Despite Washington County's entry into the Green Phase, on June 3, 2020, Governor Wolf renewed his proclamation of disaster emergency for another 90 days, noting that as of June 3, 2020, over 70,000 people in Pennsylvania tested positive or were presumed

---

[4] Courts may take judicial notice of a governor's proclamations.  *E.g.*, *Easy Sportswear, Inc. v. Am. Econ. Ins. Co.*, 2008 U.S. Dist. LEXIS 51402, at *3–4 (W.D. Pa. July 1, 2008) (taking judicial notice of the Governor's Proclamation of Disaster Emergency);  *see also*, *Union Cty. Jail Inmates v. Di Buono*, 713 F.2d 984, 988 n.4 (3d Cir. 1983) (taking judicial notice of then-New Jersey Governor Kean's action to extend the duration of existing executive orders).
[5] Also available at: https://www.governor.pa.gov/process-to-reopen-pennsylvania/.
[6] Also available at: https://www.pema.pa.gov/Governor-Proclamations/Documents/06.03.2020%20TWW%20amendment%20to%20COVID%20disaster%20emergency%20proclamation.pdf.

positive for COVID-19 and "the COVID-19 pandemic continues to be of such magnitude or severity that emergency action is necessary to protect the health, safety and welfare of affected citizens in Pennsylvania." Pa. Exec. Order, *Amendments to Proclamation of Disaster Emergency* (June 3, 2020) (on file with the author). The Court must consider the Defendants' conduct in the context of the novelty of the pandemic when deciding whether, given that context, Defendants had fair warning that they violated Plaintiffs' rights, if they did. *See e.g.*, *Northland Baptist Church of St. Paul*, *v. Walz*, 2021 U.S. Dist. LEXIS 60884, at *19 (D. Minn. Mar. 30, 2021) (holding that the Governor defendant had qualified immunity because, given the context of the pandemic, "existing precedent did not clearly establish Plaintiff's rights at the time of the alleged violations so as to put Governor Walz's conduct beyond debate."). The question whether the government could limit First Amendment rights by prohibiting in-person gatherings given the ongoing COVID-19 pandemic was not clearly established at the time, or even several months later. *E.g.*, *Pleasant View Baptist Church v. Saddler*, 506 F.Supp.3d 510, 519 (E.D. Ky. 2020) (noting that, at the time of the decision on December 11, 2020, there was an appeal pending before the Supreme Court, *Danville Christian Academy, Inc. v. Beshear*, 20-6341 (6th Cir. 2020), *appeal docketed*, No. 20A96 (Dec 1, 2020) that would decide whether COVID-19 mitigation orders that prohibited in-person gatherings was a lawful limitation on the plaintiff's religious freedom rights given their sincerely-held religious beliefs that they were called by God to have in-person religious and academic instruction for students). Accordingly, as of June 2020, it was unclear to the courts, much less the average government officials such as Defendants, that denying Plaintiffs physical access to the June 24, 2020 meeting violated a clearly established right. Accordingly, the Defendants named in Count XIV are entitled to qualified immunity. The Court will dismiss this Count with prejudice and without leave to amend, because leave to amend would be futile in light of the fact that, at the

time of Defendants' actions, there was not a sufficient consensus in the case law that would have put Defendants on notice that prohibiting Plaintiffs from physically attending a Township meeting in the midst of the COVID 19 pandemic, and offering videoconference access, would violated Plaintiff's First Amendment rights.

### c) Plaintiffs' Count XV Deprivation of Rights Claim Fails

Plaintiffs' Count XV alleges that unspecified "Defendants" worked "in concert to host an unlawful and private meeting, denying Plaintiffs . . . entry into a public meeting on June 24, 2020, by failing to follow clearly established law and violating their [First, Ninth, and Fourteenth] Amendment[] and due process rights." ECF No. 19 at ¶ 128. As previously indicated, the Court will treat Plaintiffs' Count XV as a § 1983 claim. The Court reads Count XV as asserting the same theory of liability as Plaintiffs' Count XIV § 1983 claim, but Plaintiffs aim Count XV at Defendants generally, rather than a discrete subset as in Count XIV. *See* ECF No. 19 at ¶ 128. As to the subset of Moving Defendants that are named in both Count XIV and XV—"Township Officials," Daerr Defendants, Defendants Trax, Lawson, Massari, and Sweat—Count XV will be dismissed for the same reasons discussed above. Plaintiffs allegations do not explain how Defendants D'Amico, Stiner, or Bockstoce were personally involved in preventing them from accessing the June 24, 2020 Township meeting; therefore, Count XV will be dismissed against Defendants D'Amico, Stiner, and Bockstoce for lack of personal involvement. Count XV must be dismissed against Defendant Cruny, because he is entitled to qualified immunity given that there was not a clearly established constitutional right to attend a Township meeting in person, during the ongoing COVID-19 pandemic. Accordingly, Count XV will be dismissed with prejudice and without leave to amend.

### d)  Plaintiffs' Count XVII Deprivation of Rights Claim Fails

Plaintiffs' Count XVII alleges that Mr. Daerr violated their First and Fourteenth Amendment rights when he "knowingly and willfully" blocked "entry to the door to the public meeting at Union Township municipal building on July 8, 2020, denying [Plaintiffs] entry to the building."  ECF No. 19 at ¶ 130.  Here, Plaintiffs do sufficiently  plead that Mr. Daerr was personally involved in denying them access to the Township meeting.  *Id*. at ¶ 87.  Specifically, Plaintiffs contend that Defendant Kevin Daerr  physically blocked the door to the public Township meeting.  ECF No. 19 at ¶ 130.  As previously discussed, Plaintiffs have a plausible argument that their First Amendment rights were violated when they were not permitted to physically attend the June 24, 2020 Township meeting.  However, like the Defendants named in Count XIV and XV, Defendant Kevin Daerr is entitled to qualified immunity with respect to Plaintiff's claim in Count XVII.  The legal uncertainty surrounding restrictions to in-person public gatherings that implicate First Amendment freedoms was not resolved in the time between the June 24, 2020 meeting raised in Count XIV and the July 8, 2020 meeting raised in Count XVII.  Accordingly, Mr. Daerr would not have known that enforcing restrictions to public access of in-person Town meetings would mean violating Plaintiffs' clearly established constitutional rights.  Therefore, he is entitled to qualified immunity with respect to Plaintiffs' Count XVII claim.  Given that any amendments would also be futile, Count XVII will be dismissed with prejudice and without leave to amend.

### B.  Plaintiffs' Cause of Action for Declaratory Relief Fails

Plaintiffs' Count XXVI is titled "declaratory relief."  ECF No. 19 at Count XXVI.  In this Count, Plaintiffs request a declaratory judgment which states:  "All Plaintiffs' claims against Union Township and their officials, are so egregious and unconstitutionally harmful that Plaintiffs petition the Court to issue an order, declaring that such conduct be not repeated.  Also, that Union

Township must adjust their policies, practices, procedures, and customs to conform with Constitutional provisions protecting the people of Union Township." ECF No. 19 at ¶ 139. . The Declaratory Judgment Act, which empowers the Court to issue declaratory judgments, provides for such judgments as a form of relief, not as an independent basis for jurisdiction and, therefore, requires an underlying cause of action. *See Allen v. Debello*, 861 F.3d 433,  442 (3d Cir. 2017); *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F.Supp.3d 482, 504 (E.D. Pa. 2018) ("Declaratory judgment is a remedy and not a cause of action."); *Doge-Regupol, Inc. v. RB Rubber Prods.*, 585 F.Supp.2d 645, 651 (M.D. Pa. 2008).  Therefore, Plaintiffs' separate cause of action for declaratory relief in Count XXVI will be dismissed.

Furthermore, while Plaintiff's Count XXVI is styled as a declaratory judgment cause of action, the thrust of Plaintiffs' request is for injunctive relief.  *See Alli v. Decker*, 650 F.3d 1007, (nothing that "[u]nder some circumstances, declaratory relief has been deemed 'functionally equivalent' to injunctive relief.");  *see also*, *California v. Grace Brethren Church*, 457 U.S. 393, (1982) (nothing that the declaratory judgment requested "may in every practical sense operate" as a form of injunctive relief.).  Injunctive relief, like a declaratory judgment, is a form of relief—not an independent cause of action.  *Chruby v. Kowaleski*, 534 Fed.Appx. 156, 160 n.2 (3d Cir. 2013). Where a plaintiff includes a request for relief as a separate cause of action, the court may dismiss the count as redundant and not in conformity with Federal Rule of Civil Procedure 8.  *See e.g.*, *Kauffman v. Pa. SPCA*, 766 F.Supp.2d 555, 560 (E.D. Pa. 2011).  Therefore, to the extent Plaintiffs' Count XXVI is construed as a request for injunctive relief, it is subject to dismissal as a separate cause of action.  Finally, because the Court is dismissing all underlying causes of action with prejudice, the request for declaratory of injunctive relief does not have a foundation and the dismissal of Count XXVI will be with prejudice.

**C.     The Court Declines to Exercise Supplemental Jurisdiction over Plaintiffs' Remaining State Law Claims**

Because Plaintiffs' federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over the state law claims alleged in Counts XII (intentional infliction of emotional distress) and XXI (common law conspiracy).  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.").  Because the Court does not address the merits of Plaintiff's state law claims, Plaintiffs' claims in Counts XII and XXI will be dismissed without prejudice.

**IV.     Conclusion**

For the foregoing reasons, the First Amended Complaint, ECF No. 19, will be dismissed in its entirety.  Plaintiffs' Counts XIII (§ 1983), XIV (§ 1983), XV (deprivation of federal rights), XVII (deprivation of federal rights), and XXVI (declaratory judgment) will be dismissed with prejudice and without leave to amend.   and Plaintiffs' Counts XII (intentional infliction of emotional distress) and XXI (common law conspiracy) will be dismissed without prejudice pursuant to 28 U.S.C. § 1367.

An appropriate order will follow.

DATED this 27th day of August, 2021.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

20

cc (via US Mail):

Plaintiffs Mieczyslaw and Sabine Gniadek